IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAIN STREET AMERICA ASSURANCE COMPANY and NGM INSURANCE COMPANY | : : : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNITED INSULATION SERVICES, INC., UNITED STATES INSULATION OF PA, LLC and K&I PAINTING, LLC | : : : | NO. 20-3430 |

### MEMORANDUM OPINION

**Savage, J.**                                                                       **March 31, 2022**

      Claims of defects and faulty workmanship in the construction of a condominium project have spawned a number of lawsuits in the Court of Common Pleas of Montgomery County, Pennsylvania involving a multitude of parties. Among the lawsuits is a declaratory judgment action seeking to resolve insurance coverage issues. One of the insurers in that action has brought this declaratory judgment action asking us to decide the same issue raised and pending in the state court.

      After considering all relevant factors and the pending parallel state proceeding, we shall decline to exercise jurisdiction over this action.

      Plaintiffs Main Street America Assurance Company, a commercial general liability insurer, and NGM Insurance Company, an umbrella insurer (collectively, "Main Street"), seek a declaration that they have no duty to defend and indemnify its insureds, United Insulation Services, Inc., United States Insulation of PA, LLC, and K&I Painting, LLC (collectively, "United"), against claims asserted by the project developer, D.R. Horton, Inc.

– New Jersey, in an underlying lawsuit for property damage caused by United's alleged faulty installation of insulation.

Horton, who contracted with United to install insulation in the Project, moves to intervene in this action, arguing that as an additional insured under United's policy with Main Street, it has a significant interest in Main Street providing it a defense and coverage in the Underlying Action against claims brought against it by the Association. It contends that its interest as an additional insured is unique and cannot be adequately represented or protected by United.

Because the parties to this action and Horton are parties to a pending state court proceeding involving the same coverage claims at issue here, we shall exercise our discretion to decline jurisdiction over Main Street's declaratory judgment action and dismiss this case without prejudice.

## Factual Background

This coverage dispute arises out of the construction of a condominium complex in Conshohocken, Pennsylvania called the Grande at Riverview Condominiums ("the Project").[1] The project developer, D.R. Horton, Inc., contracted with United to install insulation on the Project on July 28, 2006.[2]

In 2013, the Grande at Riverview Condominium Association (the "Association") brought an action in the Court of Common Pleas of Montgomery County, Pennsylvania

---

[1] The Project consisted of the construction of 387 condominium units in three multi-story buildings, a pool, fitness room, courtyards, walkways, parking areas, underground garages and lobbies. Compl. for Declaratory J. (Doc. No. 1) ("Compl.") ¶ 49.

[2] *See* Contractor Agreement between Horton and United (Doc. No. 1-18). Horton recorded the Declaration for the Project in September 2005. *See* Underlying Action, Sixth Am. Compl. ("Und. Compl.") (Doc. No.1-16) ¶ 13.

against Horton and the architect of the Project ("Underlying Action").[3]  The suit alleged construction defects and faulty workmanship.  The Association sued Horton for breach of its contractual duties, negligent construction, negligent supervision, breach of its fiduciary duty and duty to act in good faith, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.[4]  It also sued the architect for professional liability/negligence and breach of contract for negligent planning, design, construction and evaluation of the Project and failure to ensure compliance with the construction plans and building codes.[5]

In its Sixth Amended Complaint ("Underlying Complaint"),[6] the Association alleges that in January 2014, sprinkler pipes in condo units in two buildings and the lobby of a third building ruptured, causing significant water damage to multiple condo units and the common areas.[7]  It alleges there were "significant design and construction flaws" in the sprinkler system that led to the ruptures.  Specifically, it claims that among other "construction defects and deficiencies," insufficient insulation was installed in the floor-to-ceiling cavity, exposing the CPVC fire sprinkler piping to freezing temperatures. Additionally, the sprinkler piping was installed along exterior walls with no batt insulation to protect against cold temperatures.[8]  The Association contends that, as early as 2006,

---

[3] *See Grande at Riverview Condo. Ass'n v. D.R. Horton, Inc. – N.J.*, Civ. A. No. 2013-13279 (C.P. Montgomery Cnty. filed May 31, 2013) ("Underlying Action Docket").

[4] *See* Compl. ¶ 59.

[5] Und. Compl. ¶¶ 301-17.

[6] The Sixth Amended Complaint is the operative complaint in the Underlying Action.

[7] *Id.* ¶¶ 60–62.  Although there are many other defects alleged, we note just those relevant to United.

[8] *Id.* ¶¶ 60–62, 65–66, 101, 126–33; Compl. ¶¶ 51–54, 56–57.

3

Horton ignored the warnings of design, engineer, and inspection professionals that the fire sprinkler system installed in unheated areas would not withstand freezing temperatures.[9]  It seeks damages for the cost to "repair and remediate the damage caused by the ruptured fire sprinklers" and to "address the defects that made the fire sprinkler system vulnerable to freezing."[10]  In addition to the problems with insulation in the fire sprinkler system, the Association also alleges that "insufficient sound insulation" between the condo units was one of the "defects, deficiencies and non-conformities" in the Project.[11]  The Association neither sued nor mentioned United in its original or five subsequent amended complaints.[12]

A few months after the Underlying Action was filed, Horton joined 27 subcontractors as additional defendants.[13]  Approximately one year later in its Third Amended Joinder Complaint, it joined United.[14]  In its latest joinder complaint,[15] Horton alleges that it contracted with United to perform installation of insulation on the Project, and that "any alleged defects with the insulation, and/or the installation thereof, are the

---

[9] Und. Compl. ¶¶ 77–81.

[10] *Id.* ¶¶ 72–73.

[11] Compl. ¶¶ 58, 61; Und. Compl. ¶ 152(a) (alleging "insufficient sound insulation between the units" as one of the "defects, deficiencies and nonconformities" in the Project).

[12] Compl. ¶ 60.

[13] *See* Joinder Compl., Underlying Action Docket Entry No. 75 (filed Oct. 28, 2013).  As of March 30, 2022, a total of 107 additional defendants have been named.  *See* Underlying Action Docket.

[14] The Third Amended Joinder Complaint was filed in November 2014, and United was served in May 2015.  *See* Underlying Action Docket Entry No. 781.  The Association claims that it discovered the defects in the installation of insulation and in the fire sprinkler system after the sprinkler pipes ruptured in 2014.  *See* Und. Compl. ¶¶ 60–66.  Consequently, it first made allegations of these defects in its Fourth Amended Complaint, which was filed on September 23, 2014.  *See* Underlying Action Docket Entry No. 601.

[15] *See* Sixth Am. Joinder Compl. (Doc. No. 1-17) (filed Aug. 19, 2016).

4

result of defective work performed by" United and its failure to perform its insulation work on the Project free of defects and in a manner consistent with all applicable building codes and professional and industry standards.[16] It asserts claims of negligence, breach of contract, breach of express warranty, failure to procure insurance, contribution, common law indemnification and contractual indemnification against all defendants, including United. It demands that if it is found liable to the Association, the additional defendants, including United, are solely and/or jointly and severally liable to the Association for damages and to Horton for indemnity and/or contribution.[17]

More than three years after it was served with the Third Amended Joinder Complaint, United tendered the defense to Main Street,[18] seeking defense and indemnity under its commercial general liability ("CGL") insurance policy (the "Policy").[19] After an initial investigation, Main Street assumed the defense of United, subject to a reservation of its rights.[20]

In October 2017, Horton filed a declaratory judgment action in the Court of Common Pleas of Montgomery County, Pennsylvania against United and the other subcontractors involved in the Project, "seeking declaratory judgment regarding the

---

[16] *Id.* ¶¶ 53–54, 163–64.

[17] *Id.* ¶¶ 162–211.

[18] United notified Main Street of Horton's claim in June 2018. *See* Reservation of Rights Letter (Doc. No. 24-22) at 1.

[19] *See* Main Street Policy Number MPU2221A (attached as Ex. 1 to Compl., Doc. Nos. 1-1–14). NGM issued United a commercial umbrella insurance policy (the "Umbrella Policy"), containing the same relevant policy terms and definitions as the Policy. *See* NGM Policy Number CUU2221A (attached as Ex. 2 to Compl., Doc. No. 1-15).

[20] Compl. ¶¶ 73–74.

5

[subcontractors'] contractual obligations to indemnify and defend [Horton] against claims brought against it" by the Association in the underlying action.[21] That action is pending.

A year later, Horton filed a second declaratory judgment action in the state court. This one was brought against the numerous insurers of the subcontractors, including Main Street (the "Additional Insured Litigation").[22] In that case, Horton seeks a declaratory judgment that Main Street and the other insurers must provide a defense and indemnify Horton, as an "additional insured" under the policies issued to United and the other subcontractors, in the Underlying Action against claims brought against it by the Association.[23] It contends that Main Street breached the Policy and acted in bad faith by not providing additional insured coverage to Horton.[24] In addition to Main Street, Horton alleges that four other insurers—Atlantic States Insurance Company, Liberty Mutual Insurance Company, Selective Way Insurance Company and Westfield Insurance Company—are required to provide it additional insured coverage under policies issued to United.[25]

---

[21] *See* Action for Declaratory J., Preamble, *D.R. Horton, Inc. – N.J. v. All About Constr.*, Civ. A. No. 2017-25850 (C.P. Montgomery Cnty. filed Oct. 27, 2017) (Doc. No. 1-21 at ECF 9–10). Main Street is not defending United in that action. Compl. ¶¶ 70-71.

[22] *See D.R. Horton, Inc. – N.J. v. AIG Specialty Ins. Co.*, Civ. A. No. 2018-24627 (C.P. Montgomery Cnty. filed Oct. 23, 2018) ("Additional Insured Litigation Docket").

[23] In accordance with its contract with United, Horton was listed as an "Additional Insured" under United's insurance policy with Main Street. *See* Contractor Agreement between Horton and United (Doc. No. 1-18) at 11 ¶ 12.

[24] *See* Horton's Mot. to Intervene (Doc. No. 27) ¶ 11; Horton's Br. in Supp. of Mot. to Intervene (Doc. No. 27-2) at 3; Main St.'s Br. in Opp'n to Horton's Mot. to Intervene (Doc. No. 30-1) at 4.

[25] *See* Second Am. Compl. (Additional Insured Litigation Docket Entry No. 227) (filed June 24, 2019), ¶¶ 34–40 (Atlantic States), 208–214 (Liberty Mutual), 332–339 (Selective Way), and 380–387 (Westfield).

In August 2020, after years litigating preliminary objections to the first three complaints in the Additional Insured Litigation, Horton filed a Third Amended Complaint, adding all of the subcontractors, including United, as defendants.[26]  After some preliminary objections were sustained and some overruled, Main Street filed an Answer with New Matter and Cross-Claims.[27]  In its New Matter, Main Street asserts virtually identical allegations and claims that it asserts in this action.  In its cross-claims, which it asserts against all of the insurer defendants, it seeks "allocation, equitable contribution, common law contribution, and contribution."[28]  Many of the other insurers assert similar cross-claims against Main Street.

Shortly before Horton filed its Third Amended Complaint adding the subcontractors as defendants in the Additional Insured Litigation, Main Street filed this declaratory judgment action against United.  Moving for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), Main Street seeks a declaration that it has no duty to defend or indemnify United against Horton's claims.

Moving to intervene in this action, Horton contends that as an additional insured under United's policy with Main Street, it has a significant interest in Main Street providing it a defense and coverage in the Underlying Action against claims brought against it by the Association.  It contends that its interest as an additional insured is unique and cannot be adequately represented or protected by United.

---

[26] Although United was served with the Third Amended Complaint, no one has entered an appearance on its behalf and it has not filed a response to the complaint.  *See* Notice of Service (Additional Insured Litigation Docket Entry No. 534) (docketed Nov. 24, 2020).

[27] *See* Main St.'s Answer, New Matter and Crossclaim to Pl.'s Third Am. Compl. (Additional Insured Litigation Docket Entry No. 925) (filed June 15, 2021).

[28] *Id.* at 85.

Even though the parties to this action and the proposed intervenor are also parties to the Additional Insured Litigation in the state court proceeding involving the same coverage claims at issue here, neither United nor Horton argue that we should decline to exercise jurisdiction over the federal lawsuit.  Yet, United raises the issue in its Answer and Horton does in its proposed Answer to Main Street's declaratory judgment complaint.

In its Answer, United denies that the court has subject matter jurisdiction, and adds that if there is subject matter jurisdiction, "it is discretionary, and the Court should decline to exercise it."[29]  Additionally, United asserts the following affirmative defense:

> This Court should decline to exercise jurisdiction because this dispute involves unsettled state law issues and there is a parallel proceeding in the Court of Common Pleas of Montgomery County is [sic] the action captioned *DR Horton, Inc.-New Jersey v. AIG Specialty Insurance, et al*, No. 2018-24627 involving essentially the same parties and same issues.[30]

In its proposed Answer attached to its motion to intervene, Horton asserts the following affirmative defense:

> This Court should decline to exercise jurisdiction because this dispute involves factual determinations and state law issues also present in a parallel proceeding [in] the Court of Common Pleas of Montgomery County in the action *D.R. Horton, Inc. - New Jersey v. AIG Specialty Insurance, et al*. No. 2018-24627 (the "Additional Insured Litigation").[31]

In its proposed Counterclaim, Horton asserts that because "state law is at issue, and there is a parallel case pending in [the state court], . . . any interpretation of the

---

[29] United's Answer and Countercl. to Compl. for Declaratory Relief (Doc. No. 19) ("United's Answer") ¶ 11.

[30] *Id.* ¶ 117.

[31] *See* Horton's Proposed Answer with Countercl. to Pl.'s Complaint (Doc. No. 27-3) ("Horton's Proposed Answer"), Affirmative Defenses ¶ 2.

8

insurance policies at issue should be decided in that matter as opposed to the instant litigation."[32]

Even though the issue has not been briefed, we shall consider whether we should exercise our discretion to decline jurisdiction over Main Street's declaratory judgment action.[33]

## Analysis

Under the Declaratory Judgment Act ("DJA"), a federal court "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). As the statutory language makes clear, the federal court's subject matter jurisdiction over actions seeking declaratory relief is discretionary. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134 (3d Cir. 2014) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)). The DJA "'confer[s] . . . unique and substantial discretion'" on federal courts to decide whether to declare a litigant's rights. *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 196 (3d Cir. 2021) (alteration in original) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995)). Thus, even when subject matter jurisdiction exists, district courts have substantial discretion to decline jurisdiction and abstain from hearing a declaratory judgment action. *Reifer*, 751 F.3d at 139 (quoting *Wilton*, 515 U.S. at 286, 288).

---

[32] *Id.*, Countercl. ¶ 4.

[33] Even if the issue had not been raised, we may *sua sponte* decline to exercise jurisdiction in an action seeking only declaratory relief. *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000) (stating that even if no party challenges the district court's assumption of jurisdiction, the court may *sua sponte* decline jurisdiction when circumstances support the decision); *see also Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 146 n.22 (3d Cir. 2014).

A significant, but not dispositive, factor to consider when exercising DJA discretion is the existence of a pending parallel state proceeding. *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 282 (3d Cir. 2017) (citations omitted). A pending parallel state proceeding "'militates significantly' in favor of . . . declining . . . jurisdiction." *DiAnoia's*, 10 F.4th at 196 (quoting *Reifer*, 751 F.3d at 144–45).

Proceedings are parallel if they involve substantially similar parties and issues. *Kelly*, 868 F.3d at 284, 286 (citations omitted). To be substantially similar, the parties in the two proceedings must be closely related and "the resolution of an issue in one will necessarily settle the matter in the other." *Id.* at 284 n.8 (citations omitted).

The Additional Insured Litigation in the state court is a pending parallel state proceeding. The parties in this action are parties in that action. In the state court action, Horton named Main Street and United as defendants. In this action, Main Street and United are parties, and Horton has moved to intervene as a defendant.

The issues in both proceedings are substantially similar. In the state proceeding, Horton seeks to enforce its right to defense and indemnification for liability to the Association in the Underlying Action. It claims that Main Street is required to provide it a defense and indemnity due to its status as an additional insured under the policies issued to United. Main Street denies a duty to defend and indemnify Horton.

In this action, Main Street asserts a claim against United seeking a declaration that it owes no duty to defend or indemnify United. United asserts a counterclaim and Horton a proposed counterclaim seeking "a declaration that [Main Street] ha[s] a duty to defend and, at the appropriate time, indemnify them" in connection with the Underlying Action.[34]

---

[34] *See* United's Answer ¶ 126; Horton's Proposed Answer, Countercl. ¶ 2.

These claims are virtually identical to Horton's claim asserted against Main Street in the Additional Insured Litigation, as well as what United may assert when it enters an appearance in that case. Thus, all the claims and defenses in the federal court action are being litigated, or could be litigated, in the Additional Insured Litigation in the state court.

"[T]he 'mere existence of a related state court proceeding' does not *require* a district court to decline to exercise jurisdiction under the DJA." *Reifer*, 751 F.3d at 143 (citation omitted) (emphasis added). The Third Circuit has articulated a non-exhaustive list of eight factors[35] we must "meaningful[ly] consider[] . . . to the extent they are relevant" when deciding whether to exercise jurisdiction. *Id.* at 146. When there is a pending parallel state proceeding, we must determine whether the relevant *Reifer* factors outweigh the strong presumption against exercising jurisdiction. These factors are:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;
>
> (3) the public interest in settlement of the uncertainty of obligation;
>
> (4) the availability and relative convenience of other remedies;
>
> (5) a general policy of restraint when the same issues are pending in a state court;
>
> (6) avoidance of duplicative litigation;
>
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and

---

[35] Courts refer to these as the "*Reifer* factors."

> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*DiAnoia's*, 10 F.4th at 196–97 (quoting *Reifer*, 751 F.3d at 146).

Having determined that a parallel state proceeding exists, we now weigh the relevant *Reifer* factors. The first, fourth, fifth and sixth factors are relevant. The first factor – whether a federal court declaration will likely resolve the uncertainty of the obligation that gave rise to the controversy – examines whether a declaration would completely terminate the controversy between the parties, "avoid[ing] duplicative, piecemeal litigation." *DiAnoia's*, 10 F.4th at 205 (citation omitted).

Even if Horton were permitted to intervene, a declaration would not resolve all of the insurance coverage issues raised by all parties. In the Additional Insured Litigation, Horton alleges that four other insurers in addition to Main Street are required to provide it coverage as an additional insured. Main Street has asserted cross-claims against all of the other insurers, and some of them have asserted cross-claims against Main Street. A declaration in federal court for or against Main Street will not terminate the issues between the parties because it would not resolve the coverage issues involving the four other insurers. In contrast, the state court action will resolve all issues raised in both actions by all parties to the federal lawsuit. Thus, this factor weighs against exercising jurisdiction.

The next relevant *Reifer* factor is the fourth—the availability and relative convenience of other remedies. What Main Street seeks here – a declaration in the pending state court proceeding that it owes no duty to defend or indemnify United – will be decided in the pending state court action. The state court will determine the coverage

12

issue. Because this remedy is identical to the declaration it seeks in this action, this factor weighs against exercising jurisdiction.

The fifth factor, the general policy of restraint when the same issues are pending in a state court, and the sixth, the avoidance of duplicative and piecemeal litigation, overlap with our determination that there is an existing parallel proceeding in the state court. Because the same issues in this action are pending in state court, deciding the coverage dispute between Main Street and United in this court would be duplicative of the same claims between those two parties in state court. Horton's proposed claims and defenses to Main Street's federal court complaint are duplicative of its claims and defenses in the Additional Insured Litigation.

Declaring the rights of Main Street and United in this action will not determine the rights of the other four insurers of United. Exercising jurisdiction here would result in piecemeal litigation. Hence, the fifth and sixth *Reifer* factors weigh against exercising jurisdiction.

When a parallel state court proceeding is pending, we also consider whether the issues in the federal suit "can better be settled" in the state proceeding. *Reifer*, 751 F.3d at 146 & n.21 (quoting *Brillhart*, 316 U.S. at 495). We examine the scope of the pending proceeding, the defenses asserted there and "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding." *Id.* at 139 & n.11 (quoting *Brillhart*, 316 U.S. at 495).[36]

---

[36] These additional factors have been referred to as the "*Brillhart* factors." *See Reifer*, 751 F.3d at 139–40 & n.11, 146 & n.21.

13

As we have noted, the parties and the claims and defenses in the state court proceeding are the same as those in the federal action. All parties' claims can be adjudicated there. Additionally, the scope of the state court proceeding is much broader than this action. Extensive litigation has taken place there for more than three years. All parties having an interest in whether United and Horton are entitled to coverage in the Underlying Action are parties to the Additional Insured Litigation. Not all parties in the state action are parties in the federal action.

Finally, in "the common case of an insurance company invoking diversity jurisdiction to seek a declaratory judgment on a purely state law matter," federal courts look to *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000) for additional guidance. *Reifer*, 751 F.3d at 146-47 (citing *Summy*, 234 F.3d at 136); *DiAnoia's*, 10 F.4th at 197 (citing *Reifer*, 751 F.3d at 146–47). In *Summy*, the Third Circuit cautioned that whether "the state law involved is close or unsettled," or is "firmly established," we should hesitate to exercise jurisdiction when the pending state proceeding is parallel to the federal one and only state law is at issue. *Summy*, 234 F.3d at 135–36. *Reifer*, 751 F.3d at 141 (quoting *Summy*, 234 F.3d at 135, 136).

United and Horton argue that Pennsylvania state law on the insurance coverage issues in the case is unsettled and close, and Main Street argues that it is settled. No matter who is correct, under *Summy*, the balance tips against exercising jurisdiction. The claims in both actions involve the interpretation of an insurance policy under state law, which the state court is competent to address.

## Conclusion

All of the relevant *Reifer*, *Brillhart* and *Summy* factors weigh in favor of declining to exercise jurisdiction. In light of the pending parallel state proceeding, the strong presumption against exercising jurisdiction is not outweighed by the *Reifer* factors. Therefore, we decline to exercise jurisdiction and will dismiss this case without prejudice.